**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>EDWARD C. FUSCO<br><br>Debtor<br><br>DAVID M. NICKLESS, TRUSTEE<br><br>Plaintiff<br><br>v.<br><br>HAWS & MILL STREET, INC., EDWARD C. FUSCO, KATHY ANN FUSCO, NICHOLE FUSCO, ASHLEY FUSCO, CHELSEA FUSCO, JAMES FUSCO, KAREN FUSCO<br><br>Defendants | Chapter 7<br>Case No. 10-46416 -MSH<br><br><br><br><br>Adversary Proceeding<br>No. 12-04026 |

**MEMORANDUM OF DECISION ON (i) DEFENDANTS' MOTION AND AMENDED MOTION TO ESTABLISH CORE/NON-CORE JURISDICTION AND JURY TRIAL RIGHTS AND (ii) CROSSMOTIONS FOR SUMMARY JUDGMENT**

The parties in this contentious proceeding are currently joined in a multi-front battle over their right to a jury trial, my authority to enter final orders and whether each side is entitled to summary judgment. Skirmishes have also broken out over requests to strike various affidavits. I attempt to address these disputes here on my way to concluding that summary judgment for either side is inappropriate.

1

**Facts**

The relevant facts are taken from those allegations in the amended complaint which the defendants have admitted, the affidavits and accompanying exhibits submitted in support of the summary judgment motions, and those facts in the plaintiff's statement of uncontested facts which the defendants have not challenged.

Defendant Haws & Mills Street, Inc. ("H&M") is a Massachusetts corporation established to buy, sell and/or hold real estate for the benefit of the Fusco family. Since 2008 H&M has elected to be a taxed as a subchapter S corporation. Defendant Edward C. Fusco ("Edward"), who is also the debtor in the main case, was H&M's original president. In October 2009, defendant Kathy Ann Fusco ("Kathy"), Edward's wife, succeeded him as H&M's president.[1] Defendant James Fusco ("James'), Edward's brother, has been H&M's treasurer since its incorporation. Defendant Karen Fusco ("Karen") is James' wife.

For a number of years prior to 1999, H&M's stock was equally divided between Edward's and James' families, with Edward, James and their spouses each owning fifty shares. In September 1999, for a total price of $30,000 an additional thirty-six shares were sold by H&M to Kathy as custodian for her three daughters, defendants Nichole Fusco, Ashley Fusco and Chelsea Fusco. H&M's articles of organization prohibit its shareholders from selling or transferring H&M stock without first offering the stock to the company.

Since its inception H&M has provided funds to both Edward and James. From February 16, 1994 through August 10, 2010, H&M transferred $145,775 to Edward. How much has been transferred to James is unclear although according to a 1999 balance sheet, the amount transferred

---

[1] Kathy Ann Fusco was referred to as Kathleen Fusco in the original complaint. Her legal name is Kathy Ann Fusco and by agreement of the parties the complaint was amended to correct her name.

to James was $36,625. H&M has not transferred funds to either Edward or James since August 2010.

On August 4, 2009, Edward signed an agreement which is titled "Pledge and Security Agreement" granting H&M a security interest in Edward's fifty shares of H&M stock. Edward maintains that the agreement was signed in exchange for H&M's agreeing to continue to transfer, or in his words "loan," funds to him. Edward never submitted a formal loan application for the funds H&M transferred to him nor is there a written corporate vote authorizing these transfers.

Edward filed a voluntary petition under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) on December 31, 2010. On schedule B of Edward's schedule of assets and liabilities filed in support of his petition Edward values his ownership interest in H&M, which he describes as a "minority interest," at $60,600.

**Procedural Posture**

On March 15, 2012, David M. Nickless, the chapter 7 trustee of Edward's bankruptcy estate, filed a three count complaint commencing this adversary proceeding against H&M and the Fusco defendants. On May 15, 2012, the trustee filed a first amended complaint adding five more counts and adding Joseph Reinhardt, the Fuscos' attorney, as a defendant. Thereafter, the trustee voluntarily dismissed count VIII, which was the only count seeking relief against Mr. Reinhardt, who was then dropped as a defendant.[2]

Count I seeks a determination of Edward's interest in H&M as of the commencement of the bankruptcy case. Count II demands turnover of all of H&M shares transferred by Edward,

---

[2] On April 4, 2013, the trustee obtained leave to file a second amended complaint for the sole purpose of correcting the name of defendant Kathy Ann Fusco. The second amended complaint also reflects the voluntary dismissal of count VIII and the dropping of Mr. Reinhardt as a party defendant. Counts I through VII of the first and second amended complaints are identical.

3

including those that may be in the possession of any of the other Fuscos. Count III seeks a determination of the validity, extent and priority of any liens H&M asserts in Edward's shares. Count IV requests that the money transferred by H&M to Edward, which H&M and Edward characterize as loans, be recharacterized as distributions of income. Count V, which appears to be pled as an alternative to count IV, seeks equitable subordination of any debt which Edward may owe to H&M. Count VI alleges a conspiracy by Edward and James to defraud Edward's creditors by causing H&M to lend Edward money while he was insolvent, by securing the loans with a pledge of Edward's H&M stock and by undervaluing that stock.[3] Finally, count VII alleges that James and Kathy, as officers of H&M, breached their fiduciary duties to the shareholders of H&M, including Edward, by imprudently and improperly causing H&M to transfer assets to James and others.

In the main case the trustee sought and received an order establishing March 11, 2013 as the deadline for filing proofs of claims. None of the defendants, not even H&M which alleges in this adversary proceeding that it holds a secured claim against Edward, filed a proof of claim. The trustee has not filed a claim on behalf of any creditor pursuant to Fed. R. Bankr. P. 3004.

## Discussion

**The Core/Non-Core Distinction and Right to Jury Trial**

Pursuant to 28 U.S.C. § 1334(a) the district court has original and exclusive jurisdiction over cases "under" the Bankruptcy Code, meaning the bankruptcy case itself, and pursuant to § 1334(b), original but not exclusive jurisdiction in all civil proceedings "arising in, arising under or related to" the bankruptcy case. Congress empowered district courts to refer all such cases and

---

[3] Although the prayer for relief for count VI requests relief against Kathy as well as James and Edward, there is no allegation that she participated in the conspiracy.

proceedings to bankruptcy courts. 28 U.S.C. § 157(a). "In Massachusetts, the district court has referred the broadest possible universe of cases which a bankruptcy court could hear, namely all cases over which the district court may exercise jurisdiction under either § 1334(a) or (b)." *In re NSCO, Inc.*, 427 B.R. 165, 176 (Bankr. D. Mass. 2010).

An adversary proceeding, which is a civil proceeding, "arises under" the Bankruptcy Code, if it involves a cause of action created by title 11. *Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir. 1987). Proceedings "arising in" a bankruptcy case "are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 97. Together, proceedings that "arise in" and "arise under" title 11 constitute the bankruptcy court's "core" jurisdiction. *Id.* at 96–97. *See also* 28 U.S.C. § 157(b). Section 157(b)(1) authorizes bankruptcy courts to enter final orders and judgments in core proceedings.[4]

A bankruptcy court has jurisdiction over a non-core proceeding provided that the proceeding is "related to" a bankruptcy case. "The breadth of the bankruptcy court's related to jurisdiction is great but not unlimited." *Vienneau*, 410 B.R. at 333. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir. 1991) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)). Determination of whether a controversy is core or non-core depends upon its relation to the basic functions of the bankruptcy court and not on the federal or state basis for the claim. *In re Arnold Print Works, Inc.,* 815 F.2d 165, 169 (1st Cir. 1987). In

---

[4] In *Stern v. Marshall*, 131 S.Ct. 2594 (2011), the United States Supreme Court held that 28 U.S.C. § 157(b)(2)(C) was unconstitutional because the bankruptcy court, a non-Article III court, lacked constitutional authority to enter final orders on state law counterclaims to proofs of claim that would not necessarily be resolved in the claims allowance process.

5

actions involving non-core claims the bankruptcy court must submit to the district court proposed findings of fact and conclusions of law unless all parties consent to the bankruptcy court's entering a final order. 28 U.S.C. § 157(c)(1) and (2).

As the parties recognize, each claim must be analyzed to determine whether it falls within the bankruptcy court's core or non-core jurisdiction. *Ralls v. Docktor Pet Centers, Inc*. 177 B.R. 420, 425 (D. Mass. 1995). Indeed, "[a] single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'" *In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir. 2008) (Internal citations omitted).

In *Nickless v. DiStefano (In re Basile)*, 472 B.R. 147, 151-52 (Bankr. D. Mass. 2012), I considered the scope of the right to trial by jury. These considerations apply with equal relevance here.

> A party's right to a jury trial in federal court is governed by federal law. *Edwards v. Eastman Outdoors, Inc. (In re Game Tracker, Inc.),* 2011 WL 5117569, at *1 (D. Me. Oct. 24, 2011) (citing 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2302 (3d ed. 2008)). "A right to a jury trial in federal court must arise out of the Seventh Amendment [to the United States Constitution] or be granted by a federal statute." *Washington Intern. Ins. Co. v. U.S.,* 863 F.2d 877, 878 (Fed.Cir.1988). In the present case there is no assertion of a statutory basis for the right to a jury trial; instead if a right exists it must emanate from the Seventh Amendment.
>
> The Seventh Amendment provides a right to trial by jury in "suits at common law" where the amount in controversy exceeds twenty dollars. The Supreme Court has defined the phrase "suits at common law" to refer to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).
>
> In *Granfinanciera* the Court articulated a three-part test for determining whether the right to a jury trial exists. The first consideration is whether the party seeking a jury trial would have been entitled to one in eighteenth century English courts of law before the merger of law and equity courts. Second, courts must determine whether the remedies sought are legal rather than equitable in nature. It is this determination, which the Supreme Court

describes as more important than the first, that generally dictates the outcome of a jury demand. Simply stated, claims which seek legal remedies generally implicate the constitutional right to a jury trial while those sounding in equity or admiralty do not. This characterization of a claim as legal or equitable is governed by federal law, even when the claim is based on a state-created right. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). Finally, even if a party would have a right to a jury trial under the first two prongs of the *Granfinanciera* test, courts must determine if the cause of action asserted involves public rather than private rights the adjudication of which Congress assigned to tribunals without authority to conduct jury trials. *Granfinanciera,* 492 U.S. at 42 & n. 4, 109 S.Ct. at 2790 & n. 4. Congress, however, may not convert private causes of action into public ones thereby depriving litigants of the right to trial by jury. *Id.* at 51–52, 109 S.Ct. at 2795.

When an action involves a combination of both legal and equitable claims, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether,* 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Consequently facts common to legal and equitable claims must be adjudicated by a jury. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The right to a trial by jury must be preserved even if the legal claims are characterized as incidental to the equitable claims. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473 n. 8, 82 S.Ct. 894, 897 n. 8, 8 L.Ed.2d 44 (1962). In such instances a court may not try the equitable claims first because to do so would subject the jury's findings to the principles of collateral estoppel. *Id.* at 479, 82 S.Ct. 894. Because protection of the right to trial by jury is so important, "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Beacon Theatres,* 359 U.S. at 510–11, 79 S.Ct. 948. *See also Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc.,* 2012 WL 837313, at *13 (D. Mass. May 4, 2012).

Moreover, as the *Dairy Queen* Court explained,

[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is ... the absence of an adequate remedy at law.

*Id.* at 477–478, 82 S.Ct. at 900. Therefore, courts must look behind the labels placed on the causes of action in the complaint as well as the causes of action themselves to determine if a remedy in equity is needed to address the alleged harm. *Id.*

Except for instances not relevant here, the right to trial by jury is not lost simply because an action is asserted in the bankruptcy court, even in a matter designated by Congress as core under 28 U.S.C. § 157(b). *Granfinanciera,* 492 U.S. at 60–61, 109 S.Ct. 2782; *Commerce*

*Industry Insurance Co. v. E.I. Du Pont De Nemours & Co. (In re Malden Mills Industries, Inc.),* 277 B.R. 449, 455 n. 4 (Bankr. D. Mass. 2002).[5]

The parties in this adversary proceeding agree on very little but they do agree that counts II (turnover), III (determination of the validity of the secured claim), and V (equitable subordination) of the amended complaint are core matters and that no jury trial right attaches to any of them. I concur. They disagree as to whether the claims asserted in the remaining counts are core (the trustee) or non-core (the defendants) and whether they are (the defendants) or are not (the trustee) triable to a jury.[6] I will examine each disputed count in turn.

**Count I: Declaratory Judgment as to Edward's Stock Interest in H&M**

Count I of the amended complaint seeks a declaratory judgment as to the percentage ownership of Edward's bankruptcy estate in the stock of H&M based in significant part on the allegation that the transfers of Edward's shares violated the corporation's articles of organization. In identifying whether a declaratory judgment claim is triable to a jury it is necessary to identify the underlying cause of action giving rise to the declaratory judgment claim. *Northgate Homes, Inc. v. City of Dayton,* 126 F.3d 1095, 1098 -99 (8th Cir. 1997) (citing *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610-11, 9 L.Ed.2d 691 (1963)).

The trustee argues that this count is merely a request for a determination as to what is property of the bankruptcy estate, a bread and butter chore of any bankruptcy court. But his argument ignores the causal underpinnings of the requested relief, namely the alleged breach of

---

[5] Having considered *Nickless v. DiStefano* at some length, the defendants' motion that I do so [#35] is now moot.

[6] The determination of whether a particular claim is core or non-core does not determine whether it is jury triable. *Braunstein v. McCabe,* 571 F.3d 108, 118 (1st Cir. 2009).

H&M's articles of organization. Under Massachusetts law, applicable here, provisions such as share transfer restrictions in a corporation's articles of organization are treated as contracts between the shareholders and the corporation, *Merriam v. Demoulas Super Markets, Inc*., 464 Mass. 721, 727, 985 N.E.2d 388, 394 (2013). Thus the cause of action which forms the basis for the declaratory judgment count is breach of a prepetition contract, a cause of action at law to which a jury trial right attaches. *Nickless v. DiStefano,* 472 B.R. at 151. This cause of action is also non-core, albeit related to the bankruptcy case in that if successfully prosecuted it will enable the trustee to recover estate assets through his claim in count II.

**Count IV: Recharacterization**

Count IV of the amended complaint seeks to recharacterize loans from H&M to the debtor as distributions of income. Recharacterization, like equitable subordination, refers to a remedy in which a debtor or trustee seeks to transform a creditor's claim for money loaned into equity like a capital contribution or a dividend distribution. The remedies are not identical.

> The effect of a bankruptcy's [sic] court's recharacterization of a claim from debt to equity may be similar to the court's subordination of a claim through equitable subordination in that, in both cases, the claim is subordinated below that of other creditors. However, there are important differences between a court' analysis of recharacterization and equitable subordination issues. Not only do recharacterization and equitable subordination serve different *functions,* but the *extent to which a claim is subordinated* under each process may be different.

*Aquino v. Black (In re AtlanticRancher, Inc.)* 279 B.R. 411, 432 (Bankr. D. Mass. 2002) (quoting *Bayer Corp.v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 748 (6th Cir. 2001).

"[E]quitable subordination ... differs markedly and serves different purposes from recharacterization. While a bankruptcy court's recharacterization decision rests on the substance of the transaction giving rise to the claimant's demand, its equitable subordination decision rests on

its assessment of the creditor's behavior." *Riley v. Tencara, LLC (In re Wolverine, Proctor & Schwartz, LLC)*, 447 B.R. 1, 31 (Bankr. D. Mass. 2011) (quoting *Fairchild Dornier GMBH v. Official Committee Of Unsecured Creditors (In re Official Committee Of Unsecured Creditors for Dornier Aviation (North America), Inc.)*, 453 F.3d 225, 232 (4th Cir. 2006)). Nevertheless, the practical effect of each can be the same, namely the subordination of the reclassified "loan" to the claims of unsecured creditors.

The defendants have not cited any authority which holds directly or by analogy that an action seeking to reclassify debt as equity would have been decided by a court of law in 18th century England prior to the merger of courts of law and equity. Monetary damages, a critical factor in determining whether a right to a jury trial exists, are not sought in this count. The relief sought is essentially the same as that for equitable subordination. Count IV is no more triable to a jury than count V which the parties agree is not triable to a jury**.** *Tenn. Valley Corp. v. B.T. Commercial Corp. (In re Tenn. Valley Corp.)*, 186 B.R. 919, 923-24 (Bankr. E.D. Tenn. 1995).

A claim for reclassification does not arise in or under the Bankruptcy Code. It can be brought outside of bankruptcy and is, therefore, non-core, albeit non-core without a right to trial by jury.

**Count VI: Conspiracy to Defraud**

Count VI alleges that the debtor, Edward, and his brother, James, conspired to defraud Edward's creditors by engineering the pledge of Edward's H&M stock and by undervaluing the stock. The trustee seeks damages in an unspecified amount. "A claim for conspiracy is a legal claim that would have been brought in a court of law in 1791." *Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.),* 449 B.R. 860, 887 (Bankr. M.D.N.C. 2011). As such, a

right to a jury trial attaches to this count.

"Actions for fraud, negligent misrepresentation, breach of fiduciary duty, conspiracy to defraud and negligence are not creatures of bankruptcy law; they are state law claims which easily may exist outside the realm of a bankruptcy court." *Oakview Terrance v. Owens Financial Group, Inc. (In re Oakview Terrace)*, 92-51909, 1994 WL 28031, at *2 (N.D.Cal. Jan. 25, 1994). *See also Morrison v. Amway Corp. (in re Morrison)*, 409 B.R. 384, 390 (S.D. Tex. 2009) (fraud, breach of contract, breach of duty of good faith and fair dealing, breach of fiduciary duty, conspiracy to commit fraud, joint enterprise and conversion are all non-core); *Hudgins v. Shah (In re Systems Engineering & Energy Management Associates, Inc.),* 252 B.R. 635, 648 (Bankr. E.D. Va. 2000) (civil conspiracy claims are non-core). Thus, count VI is non-core although related to the bankruptcy case as its ultimate goal is to enhance the bankruptcy estate.

**Count VII: Breach of Fiduciary Duties**

In count VII of the amended complaint the trustee seeks damages in an unspecified amount against James and the debtor's wife, Kathy, for breach of fiduciary duty based on their actions as officers of H&M in causing the corporation to make improvident distributions of funds to insiders and non-insiders and to encumber corporate assets for no consideration or benefit to the corporation. Although the breach complained of could be said to have been caused by fraudulent transfers by H&M, the trustee's claim of harm is one derived from the debtor's status as a shareholder of H&M. A breach of fiduciary duty claim neither arises in nor under the Bankruptcy Code. It exists outside of bankruptcy and falls within the bankruptcy court's non-core related-to jurisdiction.

Whether this non-core claim carries with it the right to a jury trial has been the subject of

11

disagreement among various courts with cases. *Compare Luper v. Banner Indus., Inc. ( In re Lee Way Holding Co.),* 118 B.R. 544, 549 (Bankr. S.D. Ohio 1990), *with Pereira v. Farace,* 413 F.3d 330, 338 (2d Cir. 2005).

In *Luper*, the court looked beyond a chapter 11 trustee's claim for breach of fiduciary duty and concluded that because at bottom it was based on alleged fraudulent transfers the claim was an action at law to be tried to a jury. *Pereira* rejected that approach noting that it "would effectively permit every breach of fiduciary duty claim to be recast as an action at law" *Pereira*, 413 F.3d at 338 (internal quotations omitted). *See also Turner v. J.P. Bolduc (In re Crowe Rope Industries, LLC)*, 307 B.R. 1, 6 (Bankr. D. Me. 2004) (agreeing with *Pereira*).

I find the reasoning of *Pereira* convincing. Historically, breach of fiduciary duty claims have been treated as equitable claims to which no right to a jury trial attaches. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567, 110 S.Ct. 1339, 1346 (1990) ("[R]espondents' duty of fair representation action is comparable to an action by a trust beneficiary against a trustee for breach of fiduciary duty. Such actions were within the exclusive jurisdiction of courts of equity. 2 Story, *supra,* § 960, p. 266; Restatement (Second) of Trusts § 199(c) (1959)."). *See also Demoulas v. Demoulas Super Markets, Inc*., 424 Mass. 501, 526-527, 677 N.E.2d 159, 178 - 179 (1997). In light of the history of treating breach of fiduciary duty claims as equitable, the trustee's request for damages caused by the alleged breach of duty would not trigger a jury trial right, this being one of those instances where a court in equity could award money damages in order to give complete relief. *Crowe Rope Industries,* 307 B.R. at 5. *But see Notinger v. Brown (In re Simply Media)*, 07-1030, 2007 WL 4264514, at *8 (Bankr. D.N.H. Nov. 28. 2007) (defendants asserted claim for monetary damages and thus entitled to a jury trial on

breach of fiduciary duty claim). Therefore, I find that there is no right to a jury trial on count VII of the amended complaint.

### Preserving the Right to A Jury Trial

In summary, counts I and VI of the amended complaint are triable to a jury. Many of the factual issues underpinning the jury triable counts, however, are the same as those which form the basis for the non-jury triable counts. For example, both the jury and non-jury triable counts will require a determination as to the nature of Edward's transfers of H&M stock. Mindful of the Supreme Court's admonition that the right to a trial by jury must be preserved even if legal claims are characterized as incidental to equitable ones, I do not believe a bench trial on counts II, III, IV, V, and VII would be appropriate until a jury determines the claims asserted in counts I and VI.

The defendants argue that if counts IV, VI and VII are core, then under the United States Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), I lack authority to enter final orders with respect to them. But counts IV, VI and VII are not core and absent the parties' consent, I cannot enter final orders on those claims in any event. 28 U.S.C. § 157(c).[7]

**The Summary Judgment and Rule 56(g) Motions**

The defendants request summary judgment in their favor on all counts of the amended complaint. The trustee seeks summary judgment on counts III, IV and VII, or in the alternative an order establishing any material fact not in dispute pursuant to Fed. R. Civ. P. 56(g), made applicable to this proceeding by Fed. R. Bank. P.7056.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) made

---

[7] While counts II, III and V are conceded to be core, no party argues that under *Stern v. Marshall* I lack authority to enter final orders as to any of them.

applicable by Fed. R. Bankr. P. 7056. Central to many if not all the counts of the amended complaint is the proper characterization of the transfer of funds between H&M and Edward and by H&M to other insiders and third parties. The trustee characterizes these transfers as gratuitous, unauthorized and harmful to H&M while the defendants maintain they were run of the mill loans or arms' length transfers for value. The parties stubbornly and vociferously cling to their particular version of the facts and I will not deprive them of the opportunity to convince a trier of fact at trial of the righteousness of their beliefs. Therefore, the motions for summary judgment will be denied.[8]

Furthermore, I decline the trustee's invitation that I make findings pursuant to Fed. R. Civ. P. 56(g). First of all, as noted above, the material facts are hotly disputed. Second, it is not my responsibility to comb through the pleadings to ferret out what facts may not be in dispute. Third, and most importantly, I will not at this time encroach into the area of fact-finding when to do so could interfere with the jury's role.

## Conclusion

I find that counts II, III and V of the amended complaint set forth core claims the resolution of which do not entitle the parties to a jury trial, that counts I and VI involve non-core claims related to the bankruptcy case which must be tried to a jury and that counts IV and VII involve non-core related-to claims as to which there is no right to a trial by jury.

Because there exist genuine issues of material fact, the trustee's motion for partial summary judgment, as well as his request to establish material facts not in dispute, and the defendants' motion for summary judgment are denied.

---

[8] Having denied summary judgment, the defendants' motion to strike the affidavits in support of the plaintiff's motion for summary judgment [# 117] is moot.

The defendants have stated they do not consent to a jury trial in the bankruptcy court. Accordingly, the defendants shall have 14 days from the date of this Memorandum to seek an order of the district court withdrawing the reference in this matter to enable the district court to conduct a jury trial on counts I and IV of the amended complaint and to permit the district court to determine the appropriate mode of disposition of the remaining counts.

Separate orders will issue.

Dated: June 10, 2013

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel appearing:

James L. O'Connor, Jr., Esq.
Susan H. Christ, Esq.
Nickless, Phillips and O'Connor
Fitchburg MA
For plaintiff:
    David M. Nickless, Chapter 7 trustee of the estate of Edward Fusco

Joseph H. Reinhardt, Esq.
Boston, MA
    For defendants Edward Fusco, Kathy Ann Fusco, Nichole Fusco, Ashley Fusco, Chelsea Fusco, James Fusco, Karen Fusco and Haws & Mill Street Inc.